1  Daniel J. Herling (SBN 103711)
   djherling@mintz.com
2  Paige E. Adaskaveg (SBN 330551)
   peadaskaveg@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   44 Montgomery Street, 36th Floor
4  San Francisco, CA 94104
   Tel: 415-432-6000
5  Fax: 415-432-6001

6  Arameh Z. O'Boyle (SBN 239495)
   azoboyle@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
   2049 Century Park East, Suite 300
8  Los Angeles, CA 90067
   Tel: 310-586-3200
9  Fax: 310-586-3202

10 Attorneys for Defendant
   TARGET CORPORATION

11

12               UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                    OAKLAND DIVISION

15 SHEJUANA ARY, individually and on behalf      Case No.  4:22-cv-02625-HSG
   of all other persons similarly situated,
16                                               **DEFENDANT TARGET CORPORATION'S
                                                 NOTICE OF MOTION AND MOTION TO
17                         Plaintiff,            DISMISS AND TO STRIKE PLAINTIFF'S
            vs.                                  COMPLAINT; MEMORANDUM OF
18                                               SUPPORTING POINTS AND AUTHORITIES**
   TARGET CORPORATION,
19                                               **[FED. R. CIV. P. 12 (b)(6), and 12(f)]**
                           Defendant.
20                                               Date:       October 13, 2022
                                                 Time:       2:00 p.m.
21                                               Judge:      Hon. Haywood S. Gilliam, Jr.
                                                 Location:   1301 Clay Street
22                                                           Courtroom 2, 4th Floor
                                                           Oakland, CA 94612
23
                                                 Complaint filed:    April 29, 2022
24                                               Trial:              TBD

25

26

27

28
                                            i

**NOTICE OF MOTION AND MOTION TO DISMISS AND TO STRIKE**

**TO THE ABOVE-ENTITLED COURT AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 13, 2022 at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr., United States District Judge, in Courtroom 2 at the United States District Court, Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California, Defendant Target Corporation ("Defendant" or "Target"), will and hereby does move this Court for an order dismissing, and/or striking portions of, the Class Action Complaint ("Complaint") filed by Plaintiff Shejuana Ary ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f).

As demonstrated in the accompanying Memorandum of Points and Authorities, Plaintiff fails to state a claim on any substantive count. Plaintiff also lacks standing to seek injunctive relief. Accordingly, Defendant respectfully requests this Court to dismiss Plaintiff's Complaint with prejudice.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Complaint (Dkt. No. 1), the Declaration of Arameh Z. O'Boyle in Support of Defendant Target Corporation's Motion to Dismiss and to Strike Plaintiff's Complaint, Request for Judicial Notice in Support of Defendant Target Corporation's Motion to Dismiss and to Strike Plaintiff's Complaint, all pleadings and papers in this action, and such other and additional evidence and argument as may be properly presented in support of the Motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff's FAL, CLRA, and UCL causes of action should be dismissed for lack of standing to seek equitable relief given that Plaintiff pleads she has an adequate remedy at law.

2.      Whether Plaintiff's request for injunctive relief under the FAL and UCL should be dismissed under Rule 12(b)(1) for lack of Article III standing.

3.      Whether Plaintiff's fraud-based FAL, CLRA, and UCL claims should be dismissed for failure to state a claim given that (i) no reasonable consumer would be misled by the Product's labeling and (ii) there was no material omission of fact or duty to disclose.

4.     Whether Plaintiff's FAL and UCL claims should be dismissed for lack of statutory standing.

5.     Whether Plaintiff's UCL claims brought under the unlawful and unfair prongs should be dismissed for failure to state a claim given that they overlap entirely with Plaintiff's FAL, CLRA, UCL, and MMWA claims.

6.     Whether Plaintiff's MMWA claim should be dismissed for lack of jurisdiction and failure to plead an underlying violation of state warranty law.

7.     Whether Plaintiff's claim for quasi-contract/unjust enrichment should be dismissed for failure to state a claim.

8.     Whether Plaintiff's prayer for punitive damages must be dismissed as a matter of law.

9.     Whether the irrelevant and immaterial unverified studies relied upon by Plaintiff to support her claims (*See* Compl., pp. 9-13, nn. 3, 5, 6, 7, 10, 11, 13, 14, 15, 16, and 17; ¶¶ 27, 28) should be stricken from the Complaint under Rule 12(f).

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................1

II.     FACTUAL BACKGROUND ...............................................................2

        A.      The Product...............................................................................2

        B.      Plaintiff's Alleged Experience with the Product .....................3

III.    MOTION TO DISMISS .......................................................................5

        A.      Legal Standards.........................................................................5

        B.      Plaintiff Lacks Standing to Pursue Injunctive Relief or Equitable Remedies .........6

                1.      Plaintiff Lacks Standing to Seek Equitable Remedies................................6

                2.      Plaintiff Lacks Standing to Seek Injunctive Relief – FRCP 12(b)(1)..........7

        C.      Plaintiff Has Not Plausibly Alleged a Statutory Consumer Claim .........................8

                1.      Fraud-Based Claims under FAL, CLRA, and UCL................................9

                        a.      "Maximum Strength" Is Not False, Deceptive, or Misleading........9

                        b.      "Pain-Relief" Is Not False, Deceptive, or Misleading.................12

                        c.      "Up to 8 Hours" Is Not False, Deceptive or Misleading ..............12

                        d.      Plaintiff's Allegations Regarding Flexibility Should Be Disregarded ..................14

                2.      There Was No Omission of a Material Fact or Duty to Disclose .............15

                        a.      Defendant Did Not Omit Any Fact Contrary to a Material Representation................15

                        b.      Defendant Was Not Obligated to Disclose Any Omitted Fact ......16

                3.      Plaintiff Lacks Statutory Standing Under the FAL and UCL...................16

                4.      Plaintiff also Fails to State a Claim Under The Unlawful and Unfair Prongs of the UCL ..............17

        D.      Plaintiff Fails to State a Magnuson-Moss Warranty Act Claim ...........................18

                1.      The Court Lacks Jurisdiction over Plaintiff's MMWA Claim .................18

                2.      Plaintiff's MMWA Claim Must Be Dismissed Because Plaintiff Has Failed to Plead an Underlying Violation of State Warranty Law .............19

        E.      Plaintiff Fails to State a Quasi-Contract/Unjust Enrichment Claim .....................19

        F.      Plaintiff's Request for Punitive Damages Must Be Dismissed ............................20

                1.      Punitive Damages Are Not Recoverable Under Plaintiff's Claims as Pled ..................21

                2.      Plaintiff Fails to Plead a Request for Punitive Damages with Particularity..................21

IV.     DEFENDANT MOVES TO STRIKE THE PUBLICATIONS AND CITIZEN PETITION CITED IN THE COMPLAINT ...............22

V.      CONCLUSION....................................................................................25

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

1

<h1 style="text-align:center"><u>TABLE OF AUTHORITIES</u></h1>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................6

5

6

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
   2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) ...................................................9, 10

7

8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................6, 22

9

10

*Calagno v. Rite Aid Corp.,*
   2020 WL 6700451 (N.D. Cal. Nov. 13, 2020) ...................................................21

11

*Cetacean Cmty. v. Bush,*
   386 F.3d 1169 (9th Cir. 2004) ...........................................................................6

12

13

*Cimoli v. Alacer Corp.,*
   546 F. Supp. 3d 897 (N.D. Cal. 2021) ...............................................................8

14

15

*City & Cnty. of San Francisco v. Whitaker,*
   357 F. Supp. 3d 931 (N.D. Cal. 2018) ...............................................................6

16

*Clemens v. DaimlerChrysler Corp.,*
   534 F.3d 1017 (9th Cir. 2008) ...........................................................................19

17

18

*Daugherty v. Am. Honda Motor Co.,*
   144 Cal. App. 4th 824 (2006) .............................................................................19

19

20

*Davidson v. Kimberly-Clark Corp.,*
   2014 WL 3919857 (N.D. Cal. Aug. 8, 2014) .....................................................22

21

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018) .............................................................................7

22

23

*Davis v. Capitol Recs., LLC,*
   2013 WL 1701746 (N.D. Cal. Apr. 18, 2013) ...................................................20

24

*Dinan v. Sandisk LLC,*
   2019 WL 2327923 (N.D. Cal. May 31, 2019) ...................................................11

25

26

*Ebner v. Fresh, Inc.,*
   838 F.3d 958 (9th Cir. 2016) .............................................................................9, 12

27

28

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ........................................................9, 11, 15, 16, 17, 18

*Engel v. Novex Biotech LLC*,
    2014 WL 5794608 (N.D. Cal. Nov. 6, 2014) ...........................................................................13

*ESG Capital Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ...............................................................................................20

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ...............................................................................................22

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) ...............................................................................................19

*Goel v. Coal. Am. Holding Co. Inc*,
    2011 WL 13128300 (C.D. Cal. July 5, 2011) ........................................................................21

*Grieves v. Superior Court*,
    157 Cal. App. 3d 159 (1984) .................................................................................................21

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................................18

*Ib Melchior v. New Line Prods., Inc.*,
    106 Cal.App.4th 779 (2003) ..................................................................................................19

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .................................................................................................6

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ...................................................................................21

*Kelly v. Fleetwood Enters., Inc.*,
    377 F.3d 1034 (9th Cir. 2004) ...............................................................................................21

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ....................................................................................................16, 17

*Lansmont Corp. v. SPX Corp.*,
    2011 WL 2463281 (N.D. Cal. June 20, 2011) .......................................................................21

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ..................................................................................................9

*Lokey v. CVS Pharmacy, Inc.*,
    2020 WL 6822890 (N.D. Cal. Nov. 20, 2020) .......................................................................11

vi

*Mack v. Mich. Millers Mut. Ins. Co.*,
 4 Cal. App. 4th 306 (1992) ........................................................................22

*Matic v. United States Nutrition, Inc.*,
 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ...........................................8

*Matilock, Inc. v. Pouladdej*,
 2020 WL 3187198 (N.D. Cal. June 15, 2020) ..........................................14

*Miller v. Rykoff–Sexton, Inc.*,
 845 F.2d 209 (9th Cir. 1988) .....................................................................25

*Missouri ex rel. Koster v. Harris*,
 847 F.3d 646 (9th Cir. 2017) .....................................................................25

*Nationwide Biweekly Admin., Inc. v. Superior Court*,
 9 Cal.5th 279 (2020) ...................................................................................6

*Rhynes v. Stryker Corp.*,
 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................................7

*Robie v. Trader Joe's Co.*,
 2021 WL 2548960 (N.D. Cal. June 14, 2021) ..........................................20

*Robinson v. J.M. Smucker Co.*,
 2019 WL 2029069 (N.D. Cal. May 8, 2019) ............................................22

*Roper v. Big Heart Pet Brands, Inc.*,
 510 F. Supp. 3d 903 (E.D. Cal. 2020)........................................................21

*Sciacca v. Apple, Inc.*,
 362 F. Supp. 3d 787 (N.D. Cal. 2019) .........................................................6

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
 552 F. Supp. 3d 901 (N.D. Cal. 2021) .......................................................12

*Shanks v. Jarrow Formulas, Inc.*,
 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) ............................................8

*Sharma v. Volkswagen AG*,
 524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................................................6, 7

*Smith v. Keurig Green Mountain, Inc.*,
 393 F. Supp. 3d 837 (N.D. Cal. 2019) .......................................................19

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020) .......................................................................7

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).................................................................................7

*Tubbs v. AdvoCare Int'l, LP*,
  2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ...............................................13

*Vallarta v. United Airlines, Inc.*,
  497 F. Supp. 3d 790 (N.D. Cal. 2020) .........................................................20

*Villa v. Maricopa Cnty.*,
  865 F.3d 1224 (9th Cir. 2017) ..................................................................7

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) ................................................................19

*Whittlestone, Inc. v. Handi–Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ........................................................20, 21, 22

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .....................................................................9

**Statutes**

15 U.S.C. § 2301 ....................................................................................19

15 U.S.C. § 2310......................................................................................18, 19

Cal. Bus. & Prof. Code § 17204 ...............................................................16

Cal. Bus. & Prof. Code § 17535 ...............................................................16

Cal. Civ. Code § 3294 .............................................................................21

**Other Authorities**

21 C.F.R. § 201.66................................................................................11

21 C.F.R. § 210.3...................................................................................9

48 Fed. Reg. 5852-01 (Feb. 8, 1983) ......................................................2, 9

55 Fed. Reg. 6932 (Feb. 27, 1990) ..........................................................24

Fed. R. Civ. P. 12(b) .....................................................................5, 6, 7, 20, 25

Fed. R. Civ. P. 12(f) ...........................................................................20, 22

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

1

## <u>MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES</u>

2

**I.     INTRODUCTION**

3

Plaintiff's copycat lawsuit is one of over a dozen consumer class actions brought against

4

manufacturers and retailers of various adhesive lidocaine patches sold over the counter ("OTC"). The

5

product at issue in this case is the "up & up lidocaine pain-relief patches" sold at Target retail stores

6

(the "Product").

7

Not surprisingly, some of the critical allegations in Plaintiff's Complaint appear implausible.

8

First, Plaintiff's allegations regarding her purchase of the Product at Target stores in Alameda County

9

are nearly **<u>identical</u>** to the allegations in a complaint filed last year by Plaintiff's counsel in the Eastern

10

District of New York regarding another brand of OTC lidocaine patch products sold at CVS. *See*

11

Declaration of Arameh Z. O'Boyle in Support of Defendant's Motion to Dismiss and to Strike

12

Plaintiff's Complaint ("O'Boyle Decl."), Ex. 8 (redline comparison of paragraph five of Plaintiff's

13

Complaint with paragraph eight of the complaint filed in *Bell v. CVS*, Case No. 1:21-cv-06850). It is

14

a remarkable coincidence that two different plaintiffs residing nearly 3,000 miles apart, who

15

purchased two different products, manufactured by different companies, and sold by different retail

16

stores, would happen to have identical experiences. Second, although Plaintiff's Complaint repeatedly

17

challenges the Product's "flexible" claim, the Product label makes no such representation. *Compare*

18

Compl. ¶ 5 *with* O'Boyle Decl., Ex. 6 (complaint filed in *Gonzalez Rodriguez v. Walmart Inc.*, Case

19

No. 1:22-cv-02991) ¶ 3. Finally, it is puzzling that Plaintiff would purchase the same Product on

20

"various occasions" (*see* Compl. ¶ 5) given her claim that it "consistently failed to provide pain relief

21

anywhere close to the represented 8 hours." *Id.* But one thing is clear: Plaintiff registered no

22

complaints about the Product until **<u>fourteen</u>** (14) predecessor class action lawsuits were initiated,

23

including four (4) filed by her counsel.

24

Plaintiff's claims, directed to three statements on Defendant's Product labeling—(1)

25

"maximum strength," (2) "pain-relief," and (3) "up to 8 hours"—fare no better. Plaintiff's claim that

26

"maximum strength" is false and misleading relies primarily on the theory that there are superior

27

prescription-strength lidocaine patches on the market that deliver a greater dose of lidocaine. No

28

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

reasonable consumer, however, would read "maximum strength" as Plaintiff alleges, particularly where the only comparison suggested on the Product's packaging is to another OTC (non-prescription) lidocaine patch with the same concentration of lidocaine. There is no dispute that 4% lidocaine—the dosage of the Product—is the maximum strength dosage permitted in the OTC marketplace.

Similarly, Plaintiff's claims directed to the "pain-relief" and "up to 8 hours" statements rely on the false equivalency that a reasonable consumer would interpret "up to" as meaning "at least." To the contrary, "up to" is a direction for the maximum amount of time the Product should be used; it is not a promise that the Product will "continuously adhere" and provide pain relief consistently for 8 hours, as Plaintiff alleges. *See* Compl. ¶ 12. The Product's directions, which Plaintiff allegedly followed, instruct consumers to "remove patch from the skin after at most 8 hours of application." O'Boyle Decl., Ex. 1. And despite her personal disappointment with the Product, even Plaintiff does not dispute that the Product can provide "pain-relief."

Plaintiff cannot bring a putative consumer class action based on her own unreasonable interpretations of an appropriate product label. Plaintiff has not shown anything false or misleading about the Product's labeling, which complies with the existing FDA regulatory framework and is consistent with many similar OTC lidocaine patches on the market. Because all of Plaintiff's claims suffer from irretrievable flaws, the Complaint should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

### A.   The Product

Target sells the store-brand non-prescription Product to consumers over-the-counter (OTC) at its retail stores and online at www.target.com. Compl. ¶¶ 3, 11; O'Boyle Decl., Ex. 1. The Product's front label describes it as "maximum strength" and prominently discloses what this means: "4% lidocaine/topical anesthetic."[1] *Id.* The label suggests consumers "[c]ompare to active ingredient in Salonpas Lidocaine Patch," which is another OTC lidocaine patch product. *Id.* The front of the label

---

[1] For nearly forty years, the FDA has recognized, in a "Tentative Final Monograph" entitled *External Analgesic Drug Products for Over-the-Counter Human Use* ("TFM"), that lidocaine can be used as an OTC analgesic up to a strength of 4%. Compl. ¶¶ 24-25; 48 Fed. Reg. 5852-01 (Feb. 8, 1983).

2

1  also explains that the Product is "for temporary relief of pain," "up to 8 hours." *Id.* The back of the

2  Product package details the same active ingredient information ("Lidocaine 4%") and directs that

3  consumers should "remove patch from the skin after at most 8 hours of application." *Id.* Defendant

4  further offers "100% satisfaction guaranteed or your money back" on each Product sold. *Id.*

5       The complete packaging is shown below:



17       **B.**    **Plaintiff's Alleged Experience with the Product**

18       The entirety of Plaintiff's alleged purchase and use of the Product is set forth in a single

19  paragraph of the Complaint—the same paragraph that mirrors the factual allegations of another

20  plaintiff's complaint against another retailer. Plaintiff alleges that she purchased the Product "on

21  various occasions," most recently in January 2022, from "one of" Defendant's stores in Alameda

22  County. Compl. ¶ 5. Plaintiff does not allege when she made her first purchase; how many times she

23  purchased the Product; when Plaintiff made her purchases during an unspecified period of time; or

24  how many times Plaintiff used the Product.

25       Plaintiff alleges that she saw three representations before making her "purchases": that the

26  Product (1) is "maximum strength"; (2) provides "pain-relief"; and (3) does so for "up to 8 hours."

27  *Id.* Plaintiff allegedly relied on these representations in purchasing the Product over "comparable and

28

3

1   less expensive" options (which she does not name), and she understood this labeling to mean that the

2   Product, in her view, "would reliably adhere to her body and provide pain relief for up to 8 hours by

3   delivering a maximum strength dose of lidocaine." *Id.*

4   At some unknown point in time after her purchases, Plaintiff "became frustrated" because the

5   Product "peeled off her body" while engaging in activities such as "walking, stretching, and sleeping,"

6   less than 8 hours after she applied the patch. *Id.* As such, Plaintiff claims the Product "failed to provide

7   pain relief" lasting "anywhere close" to 8 hours; on a "couple of occasions," the patch "peeled off her

8   body within an hour or two." *Id.* Plaintiff alleges that she would not have purchased the Product on

9   the "same terms" given what she knows now, and that she "paid a substantial price premium" in

10  comparison to "less expensive lidocaine patches"—which, again, are not identified in the

11  Complaint—without the "representations." *Id.*[2] Despite Plaintiff's "personal experience" with the

12  Product, she alleges she desires to purchase the Product again but is "concerned" about doing so

13  unless Defendant discloses the "actual pharmacological qualities" of the patches. *Id.* ¶ 6.

14  Plaintiff alleges that Defendant knew that the Product did not "live up to [its] representations

15  based on dozens of complaints posted on its own website." Compl. ¶ 15. To demonstrate this point,

16  the Complaint provides a so-called "illustrative example" of recent reviews, which, far from being

17  illustrative, selectively-highlights only negative reviews of the Product on Target's website while

18  filtering out more recent positive reviews, shown below:



19
20
21
22
23
24
25
26
27

---

[2] Notably, all of these allegations are contained in paragraph 8 of the *Bell* complaint as well.  *See*
28  O'Boyle Decl., Exs. 5, ¶ 8, Ex. 3.

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

**Kathy**
★★★★★  ✅ Would recommend
Kathy - 2 months ago, Verified purchaser

Love These Patches Just As Good As Name Brands

2 guests found this review helpful. Did you?
[Helpful]   [Not helpful]

**Pain gel patch**
★★★★★  ✅ Would recommend
Just jess - 4 months ago, Verified purchaser

Love them! It really helped my lower back! I usually have problems with adhesive on my skin but had no problems. Definitely ordering more! No stinky smells either!

(5.0) **Value** out of 5   (5.0) **Quality** out of 5

3 guests found this review helpful. Did you?
[Helpful]   [Not helpful]

O'Boyle Decl., Ex. 9.

Plaintiff further alleges that Defendant knew, or should have known, that its Product was defectively designed based on various FDA reports and scientific studies regarding the efficacy of other lidocaine products and patches. Compl. ¶¶ 16-30. Plaintiff does not allege, however, that she relied on or consulted any of these sources in making her purchasing decisions. Plaintiff also does not allege that she or her counsel conducted any sort of study demonstrating that Defendant's Product, in particular, cannot provide pain relief for up to 8 hours, and as Plaintiff admits, none of the cited studies or FDA reports concern or address Defendant's Product. *See, e.g.*, Compl., nn. 3, 4, 5, 6, 7.[3]

Based on her personal disappointment with the Product, Plaintiff seeks to bring claims on behalf of a nationwide and/or California subclass for: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"); (2) violation of California's False Advertising Law ("FAL"); (3) violation of California's Consumers Legal Remedies Act ("CLRA"); (4) violation of California's Unfair Competition Law ("UCL"); and (5) for quasi-contract/unjust enrichment. *See* Compl. ¶¶ 52-98.

## III. MOTION TO DISMISS

### A. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

---

[3] Although ultimately irrelevant for purposes of this Motion, many of plaintiff's "facts" come from a Citizen Petition, filed over three years ago, by a manufacturer of prescription lidocaine patches (Scilex Pharmaceuticals) seeking to usurp control of the market from OTC patches by asking the FDA to take regulatory action. *See* Compl. ¶¶ 20, 26, 30, nn. 8, 13, 17. Yet, to this day, Plaintiff does not allege that the FDA has taken any action against Defendant's Product or dozens of other OTC lidocaine patches, and also omits that a coalition of OTC manufacturers filed a response to the petition contesting its merits. *See* Comment from Consumer Healthcare Products Association (CHPA) (dated July 29, 2019), available at: https://www.regulations.gov/comment/FDA-2019-P-0417-0012.

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

1   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
2   *Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A
3   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
4   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint
5   pleads facts that are merely consistent with a defendant's liability, it stops short of the line between
6   possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A court
7   may disregard "allegations that are merely conclusory, unwarranted deductions of fact, or
8   unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation
9   omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
10  statements," do not suffice. *Ashcroft*, 556 U.S. at 678.

11          In addition, "[i]f a plaintiff lacks Article III standing to bring a suit, the federal court lacks
12  subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1)." *City & Cnty. of San*
13  *Francisco v. Whitaker*, 357 F. Supp. 3d 931, 940 (N.D. Cal. 2018) (citing *Cetacean Cmty. v. Bush*,
14  386 F.3d 1169, 1174 (9th Cir. 2004)). Given that a facial Rule 12(b)(1) motion is resolved in the same
15  manner as a Rule 12(b)(6) motion, Plaintiff bears the burden of establishing jurisdiction. *See Sciacca*
16  *v. Apple, Inc.*, 362 F. Supp. 3d 787, 795 (N.D. Cal. 2019).

17          **B.      Plaintiff Lacks Standing to Pursue Injunctive Relief or Equitable Remedies**

18                   **1.      Plaintiff Lacks Standing to Seek Equitable Remedies**

19          Plaintiff's FAL, CLRA, and UCL claims are equitable in nature. *See* Compl. ¶ 78 (alleging
20  "Plaintiff and the California Subclass members presently only seek injunctive relief under [the
21  CLRA] Count."); *see also Nationwide Biweekly Admin.*, *Inc. v. Superior Court*, 9 Cal.5th 279, 322
22  (2020) ("[I]n light of the particular nature of the civil causes of action authorized by the UCL and the
23  FAL, we conclude that the gist of a civil action under the UCL and the FAL is equitable rather than
24  legal in nature."). Plaintiff's Quasi-Contract/Unjust Enrichment claim is also equitable in nature. *See*
25  Compl. ¶ 98 (alleging that "Defendant's retention of the non-gratuitous benefits conferred on them
26  by Plaintiff and Class members is unjust and inequitable" [sic]); *see also Sharma v. Volkswagen AG*,
27  524 F. Supp. 3d 891, 909 (N.D. Cal. 2021) (explaining that an unjust enrichment claim is equitable).

28

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

To survive a motion to dismiss such equitable claims, Plaintiff must establish that she lacks an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Sharma*, 524 F. Supp. 3d at, 907 (N.D. Cal. 2021) (dismissing CLRA, UCL and unjust enrichment claims because the plaintiffs had not shown that legal remedies are unavailable or inadequate). Plaintiff, however, expressly seeks legal remedies in the form of compensatory and punitive damages. *See* Compl. at 25 ("Prayer for Relief") & ¶¶ 62, 69. Where, as here, "the claims pleaded by [Plaintiff] *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at \*4 (N.D. Cal. May 31, 2011).

## 2.  Plaintiff Lacks Standing to Seek Injunctive Relief – FRCP 12(b)(1)

Plaintiff lacks Article III standing to seek injunctive relief under the FAL and CLRA.[4] A plaintiff cannot represent a class seeking injunctive relief unless she herself is entitled to such relief. *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017). To seek injunctive relief, Plaintiff must show an "actual and imminent" threat of injury, not a "conjectural or hypothetical" one. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). A plaintiff-consumer "may establish the risk of future harm in two ways: (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; or (2) "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Plaintiff's generic allegations concerning her future intent do not pass the *Davidson* test. As an initial matter, Plaintiff's professed future intent is implausible, as it is not this specific Product's labeling with which Plaintiff broadly takes issue, but Plaintiff's alleged concerns regarding "efficacy" and "health-related risks" for OTC lidocaine patches generally. Compl. ¶ 6. Thus, even if the statements Plaintiff challenges—"pain-relief," "maximum strength," or "up to 8 hours"—were

---

[4] Because Plaintiff's CLRA claim hinges on her request for injunctive relief, the Court should dismiss this claim in its entirety.  *See* Compl. ¶ 78 (alleging "Plaintiff and the California Subclass members seek only injunctive relief under [the CLRA] count").

removed from the Product's label, Plaintiff does not plausibly allege that she would purchase this or any other OTC lidocaine patch in the future. If, for example, Plaintiff actually believes "maximum strength" includes comparison to a "prescription strength lidocaine patch[]," Compl. ¶ 29, then Defendant's OTC patch clearly does not qualify.

Even if Plaintiff could allege a plausible intent to purchase Defendant's Product in the future, she cannot allege any "actual and imminent" risk of future harm from the Product labeling. Plaintiff has not—and cannot—plausibly allege that she has no way of determining whether the Product representations are true. *See, e.g., Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 907 (N.D. Cal. 2021) (finding the plaintiff lacked standing because the plaintiff knew he could determine the product's dosages by consulting the back labels). In particular, Plaintiff alleges she will be unable to "make informed decisions" about whether to purchase the Product *unless* the "actual pharmacological qualities" of the patches are disclosed on the label. Compl. ¶ 6. If that is so, then Plaintiff can simply look at the Product labeling and determine, based on what she allegedly knows now, whether or not her subjective "pharmacological" disclosure standard has been met. Because Plaintiff can "easily discover" whether Defendant has cured the alleged misrepresentations without purchasing the Product, Plaintiff lacks standing to seek injunctive relief. *See Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (finding the plaintiff lacked standing because "in the future [the plaintiff can] simply look at the label on Defendant's coconut oil . . . and put it back."); *Matic v. United States Nutrition, Inc.*, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (finding the plaintiff lacked standing because "*he* knows precisely where to find" clarifying information on the product's label). Absent a plausible alleged risk of future harm, Plaintiff's claims for injunctive relief under the FAL and CLRA must be dismissed.

**C.**   **Plaintiff Has Not Plausibly Alleged a Statutory Consumer Claim**

In addition to her lack of standing to seek injunctive or equitable relief, Plaintiff fails to plead a plausible claim under the FAL, CLRA or UCL. All three claims should be dismissed because Plaintiff fails to allege: (1) a plausible theory of consumer deception based on the literally-true Product labeling; (2) that Defendant omitted from disclosure any material facts or has a duty to

disclose additional facts; (3) statutory standing to bring claims under the FAL and UCL absent any real economic injury; and (4) any additional facts supporting a claim under the unfair or unlawful prongs of the UCL (given the infirmities with Plaintiff's consumer deception theory).

### 1.   Fraud-Based Claims under FAL, CLRA, and UCL

Plaintiff's primary theory under the FAL, CLRA and UCL is one of consumer deception— *i.e.*, that Defendant's conduct is "'likely to deceive' a 'reasonable consumer.'" *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Plaintiff fails, however, to plead a plausible theory of consumer deception.

The "reasonable consumer" test applicable to all three of these statutes "requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in a reasonable manner.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Instead, the reasonable consumer standard "requires a probability 'that a *significant portion* of the general consuming public ... could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie*, 105 Cal. App. 4th at 495). Context is key. When evaluating a statement under this test, "the question is how a reasonable consumer would interpret [statements] in the context of the specific commercial interaction that Plaintiff has challenged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 2018 WL 3995832, at *4 (N.D. Cal. Aug. 21, 2018) (internal quotation marks omitted), *aff'd*, 94 F.3d 1225 (9th Cir. 2019) (emphasis added). This "context" defeats Plaintiff's attempt to plead an implausible claim here, because Plaintiff cannot show that a "significant portion" of the consuming public would be misled by the challenged statements.

### a.   "Maximum Strength" Is Not False, Deceptive, or Misleading

Plaintiff first challenges the "maximum strength" statement on the Product's label, but describing the Product as "maximum strength" is not false, deceptive, or misleading in context. It is literally true. The strength of the active ingredient, "Lidocaine 4%," is the maximum strength available for lidocaine patch OTC products. *See* Compl. ¶ 24 (citing 48 Fed. Reg. at 5867, which provides for OTC Lidocaine products at concentrations of 0.5 to 4 percent); *see also* 21 C.F.R. § 210.3(b)(16)(i) ("*Strength* means . . . "concentration of the drug substance."). Despite this literal

1  truth, Plaintiff claims that the "maximum strength" statement is misleading because the Product:

2  (1) "does not contain or deliver the maximum amount of lidocaine available in the market"; and (2) is

3  not superior or "at least equivalent" in efficacy to other "over-the-counter and/or prescription strength

4  lidocaine patches"; and (3) does not deliver "a greater dose of lidocaine" compared to other OTC

5  options. Compl. ¶¶ 13, 29, 30. None of these contentions have merit.

6        **First**, Plaintiff's allegation that she read "maximum strength" to include the "maximum

7  amount" of lidocaine available *with a prescription* is implausible and unreasonable. Construing "the

8  market" to include prescription-strength products containing a higher concentration of lidocaine

9  disregards the context of the specific commercial transaction. *See Becerra,* 2018 WL 3995832, at *4.

10 There is no allegation that Plaintiff had a prescription for a lidocaine patch; to the contrary, she

11 allegedly purchased the Product several times over the counter at a retail store, not a pharmacy. Any

12 reasonable consumer purchasing an OTC lidocaine patch off the shelf at a Target store would

13 understand "maximum strength" to be referring, if anything, to other OTC products, sitting on the

14 same retail shelf, and would not presume that an OTC product contains or delivers more lidocaine

15 than a prescription-strength product.

16       **Second**, Plaintiff's interpretation of "maximum strength" to mean the Product is "superior, or

17 at least equivalent, in efficacy and results" to prescription-strength lidocaine patches must also be

18 disregarded. In fact, the Product contains no representation whatsoever comparing "efficacy" or

19 "results" to any other product, much less a prescription product. Instead, the front label of the Product

20 suggests that consumers "**[c]ompare** to active ingredients" in another OTC, brand-name lidocaine

21 patch (which not surprisingly contains the same concentration of lidocaine and also prominently

22 displays on its packaging that the patch is "maximum strength"). *Compare* O'Boyle Decl., Ex. 1 *with*

23 Ex. 10. Any reasonable consumer purchasing a generic OTC lidocaine patch would understand that

24 "compare" means "to represent as similar" or "to view in relation to"—not "superior to." O'Boyle

25 Decl., Ex. 2. Plaintiff does not allege that the comparison actually presented on the Product's

26 packaging—to active ingredients in other OTC products with the same concentration of lidocaine—

27 is misleading or false in any way.

28

**Third**, Plaintiff's contention that the Product is not "maximum strength" because it does not contain or deliver "a *greater* dose of lidocaine in comparison to other over-the-counter lidocaine products" is nonsensical. Compl. ¶ 30 (emphasis added). Again, Plaintiff does not challenge the literal truth of the "4% lidocaine" disclosure on the Product's packaging or the fact that this is the maximum strength available for the OTC product, and the Product does not promise a "greater" dose of lidocaine compared to other OTC products. Instead, Plaintiff appears to allege that because other OTC patches contain greater total amounts of lidocaine per patch, that means the Product is not "maximum strength." Compl. ¶ 30, nn. 16-17. But as a reasonable consumer in the marketplace would quickly realize, *any* OTC lidocaine patch product is marketed and sold on the basis of the *concentration* of lidocaine, not absolute amount. The FDA requires this. *See* 21 C.F.R. § 201.66(c)(2) (instructing that labels must "state the **proportion** (rather than the quantity) of each active ingredient.") (emphasis added). In short, the Product truthfully represents that it is "maximum strength" and "comparable" to another OTC lidocaine patch of the same lidocaine concentration.

Courts in this district have dismissed similar claims pertaining to the strength of an OTC product. *See Eidmann*, 522 F. Supp. 3d at 634; *Lokey v. CVS Pharmacy, Inc.*, 2020 WL 6822890 (N.D. Cal. Nov. 20, 2020). In *Eidmann* and *Lokey*, the plaintiffs alleged the labeling of "Infants' Pain & Fever Acetaminophen" misled them to believe that the products were specially formulated for infants, when the formulations for the product and "Children's Pain & Fever Acetaminophen" for "Ages 2-11 Years" were the same. *See Eidmann*, 522 F. Supp. 3d at 639-40; *Lokey*, 2020 WL 6822890, at *1-2. The courts evaluated the alleged misrepresentations in the context of the product's full packaging—including the front labeling that prominently displayed the drug concentration—and determined that a consumer could see the concentration was identical to the children's products by looking at the labeling. *Eidmann*, 522 F. Supp. 3d at 643-46; *Lokey*, 2020 WL 6822890, at *4-5.

As in *Eidmann* and *Lokey*, here, "'[w]hat ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting.'" *Eidmann*, 522 F. Supp. 3d at 645 (quoting *Dinan v. Sandisk LLC*, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019); *Lokey*, 2020 WL 6822890, at *5 (concluding that the product's labeling was not deceptive because it showed the composition of the

medication, and thus, "the plaintiff's subjective interpretation fail[ed] the reasonable-consumer test"). The Product prominently displays the concentration of lidocaine. The front label further directs customers to compare the active ingredient in the Product to the active ingredient in another OTC lidocaine patch. Plaintiff cannot ignore and distort context, common sense, and FDA regulations to manufacture FAL, CLRA, and UCL claims.[5]

### b.   "Pain-Relief" Is Not False, Deceptive, or Misleading

A reasonable consumer would not be misled by the term "pain-relief." "Pain-relief" simply states the purpose of the Product, and critically, Plaintiff does not allege that the Product fails to provide any pain relief at all. Instead, Plaintiff alleges that the Product "consistently failed to provide pain relief anywhere close to the represented 8 hours" or to "continuously relieve pain." Compl. ¶¶ 5, 14. Plaintiff again challenges a straw man: the Product does not promise a specific time period for which pain relief will be provided (addressed below) or represent that it will "continuously" relieve pain for all users. The front label simply describes the Product as "pain-relief patches" that are "for **temporary** relief of pain." O'Boyle Decl., Ex. 1. Plaintiff's allegations do not show that a "significant portion of the general consuming public" could be misled by the phrase "pain-relief" on a pain-relief patch. *Ebner*, 838 F.3d at 965.

### c.   "Up to 8 Hours" Is Not False, Deceptive or Misleading

Plaintiff next contends that "up to 8 hours" means that the Product "continuously adhere[s]"

---

[5] Plaintiff will likely raise Judge Tigar's decisions in *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901 (N.D. Cal. 2021), *Hrapoff v. Hisamitsu Am., Inc.*, No. 21-CV-01943-JST, 2022 WL 2168076 (N.D. Cal. June 16, 2022) and *Ablaza v. Sanofi Aventis US LLC*, 4:21-cv-01942-JST, Dkt. No. 66 (N.D. Cal. July 12, 2022) in an attempt to support her claims. For a host of reasons, these decisions are not persuasive and are distinguishable from the facts alleged here. First, *Scilex*, is a Lanham Act case brought by a prescription lidocaine patch manufacturer against OTC competitors. *See* 552 F. Supp. 3d at 909. Second, *Scilex*, *Hrapoff*, and *Ablaza* concern different defendants, different products with different labeling. Third, whereas the representations at issue in the cases before Judge Tigar involve direct comparisons between OTC lidocaine products and a prescription product, neither Defendant nor the Product's labeling here make any claims about or references to prescription products. Fourth, in all three cases, defendant Hisamitsu relied on a "disclaimer" on the back of its labeling—Defendant does not rely on a disclaimer on the back of the Product's labeling here. Fifth, neither *Hrapoff* nor *Ablaza* contains a substantive analysis of the term "maximum strength"—instead the court simply adopted its own analysis from *Scilex* without applying the "reasonable consumer" test required under binding California law. *Hrapoff*, 2022 WL 2168076, at *7; *Ablaza*, Dkt. No. 66, pp. 6-7.

for "8 hours" and "provide[s] pain relief" throughout that time period. Compl. ¶¶ 12, 14. Plaintiff's interpretation is again objectively unreasonable. The Product's labeling states: "up to 8 hours"—this is a ceiling, not a floor, for appropriate use of the Product. O'Boyle Decl., Ex. 1. Plaintiff improperly conflates "**<u>up to</u>**" with "**<u>at least</u>**." These terms are distinct. "Up to" is "used as a function word to indicate a **<u>limit or boundary</u>**." O'Boyle Decl., Ex. 3. In contrast, "at least" means "not less than; at the minimum." O'Boyle Decl., Ex. 4. A reasonable consumer would not plausibly read "up to" as guaranteeing a minimum amount of time for adhesion / pain relief.

Plaintiff's unreasonable interpretation disregards important labeling information as well. The Product's directions, which Plaintiff allegedly read (Compl. ¶ 5), instruct users to "remove patch from the skin after **<u>at most 8 hours</u>** of application." O'Boyle Decl., Ex. 1. This direction confirms that "up to" is a guideline for the maximum time the Product should be used, and not a warranty or guarantee that the Product will adhere to the skin for 8 hours for every consumer. In fact, there is no language on the Product's labeling that indicates the Product will "continuously adhere" or "provide pain relief" for a specific period of time. Given the entirety of the Product's labeling, any reasonable consumer would understand the "up to" language as a direction referring to the **<u>maximum</u>**—not the minimum—amount of time the Product should or could be used.

Finally, even accepting Plaintiff's implausible and unreasonable reading of "up to 8 hours," Plaintiff's generic allegations do not show that this statement is false or misleading. Plaintiff does not cite to any scientific studies or other evidence showing that the Product, in particular, cannot provide pain relief for up to 8 hours. California law requires that claims about a product's function—like Plaintiff's claims here—must be supported by scientific studies, articles, or expert opinions. *See, e.g.*, *Tubbs v. AdvoCare Int'l, LP*, 2017 WL 4022397, at \*5-7 (C.D. Cal. Sept. 12, 2017) (granting motion to dismiss complaint where plaintiffs alleged that they did not realize any of the alleged benefits of defendants' products without allegations of supporting evidence), *aff'd*, 785 F. App'x 396 (9th Cir. 2019); *Engel v. Novex Biotech LLC*, 2014 WL 5794608, at \*3 (N.D. Cal. Nov. 6, 2014) (plaintiff must allege a challenged advertising claim has "actually been disproved" based on "evidence that directly conflicts with the claim"; allegation that an advertisement "lacks evidentiary support" is not

1   enough), *aff'd* 689 F. App'x 510 (9th Cir. 2017).

2          The hodgepodge of sources that Plaintiff cites concern prescription lidocaine patch products

3   at best; none of these sources mention Defendant's Product. *See* Compl. ¶¶ 16-23.[6] Plaintiff's

4   conclusory, "information and belief" allegation that Defendant's Product "fair[s] no better" than those

5   analyzed in a single scientific study (Compl. ¶ 20) fails to carry Plaintiff's burden of alleging facts in

6   support of a plausible misrepresentation claim about *Defendant's* Product. *See, e.g., Matilock, Inc. v.*

7   *Pouladdej*, 2020 WL 3187198, at *4 (N.D. Cal. June 15, 2020) (Gilliam, Jr., J.) (finding insufficient

8   allegations made "on information and belief" and explaining "Plaintiff must still plead sufficient facts

9   to make a claim plausible as opposed to merely speculative"). In fact, Plaintiff's allegation is so

10  conclusory that the exact same allegation—including the footnote that accompanies it—appears in a

11  complaint filed by Plaintiff's counsel in a different case against a different product. *See* O'Boyle

12  Decl., Ex. 5, ¶ 20. In addition to this glaring shortcoming, Plaintiff's key scientific study about

13  prescription lidocaine patches concerns, according to the Complaint, the irrelevant data point of

14  adherence "***after 12 hours***," and does not compare OTC lidocaine patches at all. Compl. ¶ 19

15  (emphasis added).

16         Accordingly, even under Plaintiff's implausible interpretation of "up to 8 hours" (which

17  should be rejected in any event), the sources Plaintiff cites do not analyze the Product and cannot

18  demonstrate that Defendant made any false representation of material fact.

19                    **d.      Plaintiff's Allegations Regarding Flexibility Should Be**

20                              **Disregarded**

21         Lastly, Plaintiff's Complaint offers misplaced allegations regarding flexibility that do not

22  apply to this case because the Product's packaging makes no representations about flexibility at all.

23  *See* Compl. ¶ 5, 14, 23, 34, 65. Plaintiff's "flexibility" allegations appear to be scraps from actions

24

25  ---
    [6] Plaintiff cites to: (1) a presentation on "Product Quality of Transdermal Drug Delivery Systems"

26  that does not mention lidocaine or lidocaine patches once, let alone the Product at issue (*see* Compl.
    ¶ 17, n.3); (2) a statistic based on FDA adverse event reporting regarding prescription lidocaine patch

27  products (*see* Compl. ¶ 18, n.4); and (3) a study of adherence for prescription lidocaine patches funded
    by the same prescription lidocaine patch company (Scilex) that filed the citizen petition with FDA

28  and seeks to remove OTC competitors from the market (*see* Compl. ¶ 19, n. 6.).

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

Plaintiff's counsel brought against other companies. The product labels in those cases included "Stay-put flexible patch" language, and on this basis the plaintiffs alleged that the patches should have been "sufficiently flexible to withstand regular activities." *See* O'Boyle Decl., Ex. 7 (complaint filed in *Stevens v. Walgreens*, 1:21-cv-10603) ¶¶ 10-12, 45, 48, 62, 64, 86, 96, 103; O'Boyle Decl., Ex. 6 ¶¶ 3, 4, 5, 8, 12, 13, 20. Plaintiff's apparently left-over references to "flexibility" here cannot form the basis of any claim against Defendant's Product.

### 2.   There Was No Omission of a Material Fact or Duty to Disclose

Plaintiff also asserts violations of the FAL, CLRA, and UCL based on an omission theory. *See* Compl. ¶¶ 65, 71, 88. "A plaintiff may base a claim on an alleged omission if the omitted fact is (1) contrary to a [material] representation actually made by the defendant or (2) is a fact the defendant was obligated to disclose." *Eidmann*, 522 F. Supp. 3d at 646. Defendant did not omit any fact contrary to a material representation, and it had no obligation to disclose any fact.

### a.   Defendant Did Not Omit Any Fact Contrary to a Material Representation

Plaintiff alleges that she relied on Defendant's representations that the Product provided "pain-relief" using a "maximum strength" dose of lidocaine for "up to 8 hours" when she decided to purchase the Product. Compl. ¶ 5. Therefore, the question is whether the purported omitted facts that the Product: (1) fails to adhere to its consumers' bodies for 8 hours; (2) is insufficiently flexible to withstand regular activities; (3) fails to continuously relieve pain throughout the specified amount of time represented therein due to partial or complete detachment; (4) does not contain or deliver the maximum amount of lidocaine available in the market; and (5) is not superior, or at least equivalent, in efficacy and results to other OTC and/or prescription-strength lidocaine patches, are contrary to the representations on the Product's labeling. Compl. ¶ 14. The only answer to this question is "**No**."

First, whether the Product adheres less than 8 hours or not does not change the fact that the Product should be used for only "up to 8 hours"—as the Product's labeling instructs. Second, the flexibility of the Product has no bearing on the Product's "pain-relief", "maximum strength" or "up to 8 hours" labeling. Third, whether or not the Product "continuously" relieves pain does not

1    contradict the "pain-relief patches" description on the front label. <u>Fourth</u>, that prescription-strength

2    lidocaine products have a higher concentration of lidocaine in no way impacts the fact that the Product

3    purchased by Plaintiff contains the maximum amount of lidocaine for any OTC product. <u>Fifth</u>, the

4    milligram weight of lidocaine in other OTC products is irrelevant—the maximum concentration of

5    4% lidocaine remains the maximum available in any OTC product. Plaintiff has not alleged a single

6    fact contrary to the representations on the Product's labeling.

7                    **b.      <u>Defendant Was Not Obligated to Disclose Any Omitted Fact</u>**

8              Plaintiff does not allege that Defendant was obligated to disclose any of the alleged "facts"

9    discussed in the preceding section. Nor could Plaintiff make such an allegation; such a disclosure is

10   not required under California law.

11             "The duty to disclose arises: (1) when the defendant is the plaintiff's fiduciary; (2) when the

12   defendant has exclusive knowledge of material facts not known or reasonably accessible to the

13   plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the

14   defendant makes partial representations that are misleading because some other material fact has not

15   been disclosed." *Eidmann*, 522 F.Supp.3d at 646. Plaintiff does not allege a single one of these

16   elements. There is no allegation that Defendant was Plaintiff's fiduciary. Nor is there an allegation

17   that Defendant had "exclusive knowledge of material facts not known or reasonably accessible" to

18   Plaintiff. To the contrary, the Complaint cites various public sources that Plaintiff alleges support her

19   complaints about the Product. *See, e.g.,*Compl. ¶¶ 15-23. Additionally, there is no allegation that

20   Defendant actively concealed any material fact or made a partial representation that is misleading

21   because some other material fact was not disclosed. Because Defendant did not omit any fact contrary

22   to the allegedly material representations on the Product's labeling and there was no other duty to

23   disclose, Plaintiff's omission theory fails.

24                    **3.      <u>Plaintiff Lacks Statutory Standing Under the FAL and UCL</u>**

25             Plaintiff also fails to meet the standing requirement under the FAL and UCL. Under these

26   statutes, standing is limited to any ""person who has suffered injury in fact and has lost money or

27   property'" as a result. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320–21 (2011) (quoting Cal.

28

                                                       16

Bus. & Prof. Code §§ 17204, 17535). To establish standing, Plaintiff must show: (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury," and (2) that "[the] economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising." *Id.* at 322 (emphasis in original). "[A]s a result of" "requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 326 (internal quotation marks and citation omitted).[7]

Plaintiff fails to show such an economic injury here, because Plaintiff's claim that she "paid a substantial price premium" is factually unsupported. Plaintiff fails to offer a price comparison to any non-"maximum strength" lidocaine products. *See* Compl. ¶ 5. Plaintiff additionally fails to identify any "less expensive" comparable product sold by Defendant (or any other retail outlet) to support her claim that Defendant "charge[s] a premium for the 'maximum strength,' or durational representations contained in [the Product]." Compl. ¶ 31. The Complaint leaves it entirely unclear how Plaintiff lost any money as a result of the statements on the Product's labeling. Plaintiff also completely ignores that Defendant promises "100% satisfaction guaranteed or your money back" right on the package itself. O'Boyle Decl., Ex. 1. Therefore, even if Plaintiff had lost money as a result of the representations on the Product's labeling, Plaintiff simply could have received a refund of the $7.99 purchase price. Because Plaintiff fails to allege facts plausibly showing that she suffered any economic injury, Plaintiff lacks statutory standing under the FAL and UCL.

### 4.   Plaintiff also Fails to State a Claim Under The Unlawful and Unfair Prongs of the UCL

Plaintiff further alleges that "as a result of its violations of the CLRA, FAL, and the Magnuson-Moss Warranty Act," Defendant has violated the unlawful prong of the UCL. Compl. ¶ 82. "[A] claim under this prong hinges upon whether a plaintiff can formulate a claim under the predicate law." *Eidmann*, 522 F. Supp. 3d at 647. Plaintiff's CLRA and FAL claims fail for the reasons discussed *supra*, in Section C(1), and Plaintiff's MMWA claim fails for the reasons discussed

---

[7] As discussed *supra*, Plaintiff challenges only three specific representations on the Product's packaging. She lacks standing to challenge any other representations that she does not allege she relied upon.

1    *infra*, in Section D—*i.e.*, the Court lacks jurisdiction over the MMWA claim and Plaintiff has failed

2    to plead an underlying violation of state warranty law—thus, "the UCL claim also fails." *Id.* (internal

3    quotation marks and citations omitted).

4         Plaintiff's claim under the unfair prong fails for similar reasons. "In this District, when

5    plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent

6    and unlawful prongs of the UCL, 'the unfair prong of the UCL cannot survive if the claims under the

7    other two prongs ... do not survive.'" *Eidmann*, 522 F.Supp.3d at 647 (quoting *Hadley v. Kellogg*

8    *Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017)). Plaintiff alleges that "Defendant's acts,

9    omissions, misrepresentations, practices and non-disclosures" violate the unfair prong of the UCL.

10   Compl. ¶ 83. The claim, in other words, consists entirely of the allegations proffered to support

11   Plaintiff's claim under the fraudulent prong of the UCL. *See* Compl. ¶ 86. Therefore, for the same

12   reasons Plaintiff's UCL claim fails under the fraudulent and unlawful prongs, Plaintiff's UCL claim

13   under the unfair prong fails as well.

14        **D.      Plaintiff Fails to State a Magnuson-Moss Warranty Act Claim**

15             **1.      The Court Lacks Jurisdiction over Plaintiff's MMWA Claim**

16        Plaintiff asserts a cause of action under the MMWA on behalf of herself and the putative class.

17   *See* Compl. ¶¶ 52-62. Pursuant to 15 U.S.C. section 2310, "no claim shall be cognizable" in a suit

18   brought under the MMWA, (1) "*if the amount in controversy of any individual claim is less than*

19   *the sum or value of $25*"; (2) "if the amount in controversy is less than the sum or value of $50,000

20   (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit";

21   or (3) "*if the action is brought as a class action, and the number of named plaintiffs is less than*

22   *one hundred*." 15 U.S.C. § 2310(2)(d)(3). Plaintiff fails to meet the amount in controversy for an

23   individual claim and the one hundred named plaintiff requirements.

24        *First*, Plaintiff merely alleges that she "purchased Defendant's [Product] for her personal use

25   for approximately $7.99 on various occasions within the applicable statute of limitations, with her

26   most recent purchase taking place on or about January of 2022." Compl. ¶ 5. In order to meet the

27   amount in controversy requirement for an individual MMWA claim, Plaintiff must have purchased

28

18

the product more than three times. *See* 15 U.S.C. § 2310(2)(d)(3)(A). But Plaintiff does not allege the quantity of the Product she purchased on these "various occasions," the number of "various occasions" when she purchased the Product, or that she purchased at least $25 worth of the Product (or 3+ patches). Therefore, her individual MMWA claim must be dismissed.

*Second*, "[t]he text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020). Here, there is only one named plaintiff. In an attempt to plead around the 100 plaintiffs requirement, Plaintiff alleges "15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes jurisdiction under the Class Action Fairness Act ('CAFA')." Compl. ¶ 53. However, the Ninth Circuit rejected this theory in *Floyd*, holding that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement." *Floyd*, 966 F.3d at 1035.  Plaintiff's MMWA class allegations are improper and must be dismissed.

### 2. <u>Plaintiff's MMWA Claim Must Be Dismissed Because Plaintiff Has Failed to Plead an Underlying Violation of State Warranty Law</u>

The MMWA authorizes consumers to enforce the terms of express or implied warranties. 15 U.S.C. §§ 2301, *et seq.* The MMWA "'calls for the application of state written and implied warranty law, not the creation of additional federal law,' except in specific instances in which it expressly prescribes a regulating rule." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833 (2006), *as modified* Nov. 8, 2006 (quoting *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C. Cir. 1986)); *see also Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (claims under the MMWA "stand or fall with ... express and implied warranty claims under state law."). Because Plaintiff fails to allege any state law warranty claim (or any viable claim at all), the MMWA must be dismissed.

### E. <u>Plaintiff Fails to State a Quasi-Contract/Unjust Enrichment Claim</u>

As an initial matter, "[t]here is generally 'no cause of action in California for unjust enrichment.'" *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 848 (N.D. Cal. 2019) (Gilliam, Jr., J.) (quoting *Ib Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 131 Cal.

Rptr. 2d 347, 357 (2003)). Nonetheless, the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). To allege such a claim, a plaintiff "must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.*

As with Plaintiff's FAL, CLRA, and UCL claims, her unjust enrichment/quasi-contract claim is premised on the notion that Defendant "failed to disclose that the [Product was] unfit for [its] intended purpose as an analgesic for sore muscles" and that Plaintiff and the putative class "would not have purchased the [Product] if the true facts were known." Compl. ¶ 97. For the same reasons discussed *supra*, Plaintiff has not adequately alleged facts supporting this theory of "unfitness," and her claim fails. Courts routinely dismiss unjust enrichment claims that merely piggyback on statutory claims. *See Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *7 (N.D. Cal. June 14, 2021) (where a plaintiff "fails to identify any independent theory of unjust enrichment that does not rise or fall with her [other] claims," and those claims fail, the unjust enrichment claim must also fail); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020) (Gilliam, Jr., J.) (dismissing unjust enrichment claim premised on the same theory as UCL claim).

In addition, Plaintiff fails to allege facts showing that Defendant's retention of Plaintiff's payment for the Product is unjust. Plaintiff received the Product she purchased, which provides "pain-relief," is "maximum strength" for an OTC product, and may be used for "up to 8 hours." There is no wrongful retention of a benefit at Plaintiff's expense. And, given the Product's money back guarantee, if Plaintiff truly was dissatisfied with the Product, she could have received a full refund, yet she does not allege ever having sought one. The unjust enrichment claim should be dismissed.

F.   **Plaintiff's Request for Punitive Damages Must Be Dismissed**

The Complaint's prayer includes a boilerplate and unsupported request for punitive damages. *See* Compl., Prayer ¶ (c). Such a boilerplate request for punitive damages—based on claims that do not support recovery of such damages—should be dismissed under Rule 12(b)(6).[8]  *Davis v. Capitol Recs., LLC*, 2013 WL 1701746, at *7 (N.D. Cal. Apr. 18, 2013) (citing *Whittlestone, Inc. v. Handi–*

---

[8] Alternatively, Defendant moves to strike Plaintiff's prayer for punitive damages under Rule 12(f).

1  *Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)). Even if punitive damages were recoverable, Plaintiff

2  fails to plead her request for punitive damages with particularity.

3        **1.**      **Punitive Damages Are Not Recoverable Under Plaintiff's Claims as Pled**

4        Punitive damages are not recoverable under the FAL or UCL. *See Calagno v. Rite Aid Corp.*,

5  2020 WL 6700451, at \*4 (N.D. Cal. Nov. 13, 2020); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,

6  505 F. Supp. 2d 609, 620 (N.D. Cal. 2007) ("Where a right is created by statute and the statute does

7  not expressly permit punitive damages, punitive damages under California Civil Code section 3294

8  are not available."). Plaintiff seeks only injunctive relief under the CLRA (Compl. ¶ 78), and no

9  damages of any kind. *See Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 926 (E.D. Cal.

10 2020) (finding plaintiff had no right to seek punitive damages where the CLRA claim "seeks only

11 injunctive relief").

12       Similarly, restitution is the remedy for alleged unjust enrichment; punitive damages are not

13 available as a matter of law. *See Goel v. Coal. Am. Holding Co. Inc*, 2011 WL 13128300, at \*9 (C.D.

14 Cal. July 5, 2011); *Lansmont Corp. v. SPX Corp.*, 2011 WL 2463281, at \* (N.D. Cal. June 20, 2011)

15 ("Unjust enrichment is an equitable claim...."). Nor does the MMWA allow for punitive damages.

16 *See Kelly v. Fleetwood Enters., Inc.,* 377 F.3d 1034, 1039 (9th Cir. 2004). While theoretically punitive

17 damages could be recovered under an underlying state's warranty law in an exceptionally unusual

18 case, Plaintiff has failed to allege any state warranty law(s) supporting her MMWA claim and thus

19 punitive damages are unavailable under this claim as well.

20       **2.**      **Plaintiff Fails to Plead a Request for Punitive Damages with**

21                   **Particularity**

22       California Civil Code section 3294 provides for the recovery of punitive damages only if

23 "oppression, fraud, or malice" is proven by "clear and convincing evidence." Even at the pleading

24 stage, Plaintiff must allege specific facts with particularity, as opposed to accusations and

25 conclusions, demonstrating clear circumstances of malice, oppression, or fraud to be entitled to such

26 relief. *Grieves v. Superior Court*, 157 Cal. App. 3d 159, 166-167 (1984). A plaintiff must allege

27 "despicable conduct" which is "so vile, base, contemptible, miserable, wretched or loathsome that it

28

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

1   would be looked down upon and despised by ordinary decent people," in addition to a "highly

2   culpable state of mind." *Mack v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 331 (1992).

3   Plaintiffs must set forth facts demonstrating an evil motive and intent to injure; mere conclusions are

4   not adequate. *Twombly*, 127 S. Ct. at 1964-65.

5       Plaintiff does not even attempt to meet this heightened pleading standard. The Complaint lacks

6   particularized (let alone boilerplate allegations) that Defendant acted with oppression, fraud, or

7   malice, and Plaintiff also fails to allege that any individual committed willful and malicious conduct.

8   Her prayer for punitive damages must be dismissed. *See Robinson v. J.M. Smucker Co.*, 2019 WL

9   2029069, at *7 (N.D. Cal. May 8, 2019) (Gilliam, Jr., J.) (granting motion to dismiss the prayer for

10  punitive damages where complaint did not allege that any individual acted willfully and maliciously).

11  ## IV.   DEFENDANT MOVES TO STRIKE THE PUBLICATIONS AND CITIZEN

12  ## PETITION CITED IN THE COMPLAINT

13      In addition to disregarding irrelevant allegations that do not support a plausible claim, the

14  Court should strike immaterial and impertinent allegations regarding other lidocaine products. Under

15  Rule 12(f), **"**a district court 'may strike from a pleading an insufficient defense or any redundant,

16  immaterial, impertinent, or scandalous matter.'" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970,

17  973 (9th Cir. 2010) (quoting Fed. R. Civ. P. 12(f)). "'Immaterial' matter is that which has no essential

18  or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v.*

19  *Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*,

20  510 U.S. 517 (1994) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1382, at 706-07

21  (1990)) (internal quotation marks omitted). Similarly, "'[i]mpertinent' matter consists of statements

22  that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527

23  (quoting 5 Wright & Miller, Federal Practice and Procedure § 1382, at 711). Although motions to

24  strike are generally disfavored, in the consumer class action context, courts in this circuit have stricken

25  matter that does not relate to the named plaintiffs or the specific products at issue. *See, e.g.*, *Davidson*

26  *v. Kimberly-Clark Corp.*, 2014 WL 3919857, at *11-12 (N.D. Cal. Aug. 8, 2014) (striking

27  "allegations citing on-line articles/reports and websites" that did not relate to defendant's specific

28

DEFENDANT TARGET CORPORATION'S NOTICE OF MOTION AND
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT;
MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

products or to the named plaintiffs).

Plaintiff here cannot rely on reports and studies regarding separate and distinct lidocaine products to prove her claims regarding the specific Product at issue in this case. The publications, citizen petition, and amendment to the 1983 TFM cited in footnotes 3, 5, 6, 7, 10, 11, 13, 14, 15, 16, and 17 and paragraphs 27 and 28 on pages 9-13 of the Complaint are irrelevant and immaterial.

Pages 9-10 of the Complaint contain a slew of citations to publications regarding other products. Specifically:

- Plaintiff cites a presentation titled "FDA Perspectives on Product Quality of Transdermal Drug Delivery Systems" in support of her allegations that "[a]ccording to FDA reports, topical delivery systems, *such as the one used by Defendant*, systematically fail to adhere to the body." Compl. ¶ 17(emphasis added), n.3. The presentation provides a bold disclaimer: "***Views expressed in this presentation are mine, and have not been adopted as regulatory policies by the Food and Drug Administration at this time.***"[9] And, importantly, the third-party views expressed in the presentation do not address lidocaine patches once, let alone the Product at issue in this case.[10]

- Plaintiff cites a Postgraduate Medicine article about FDA approved 5% lidocaine patches and 1.8% topical lidocaine in support of her allegation that "[e]ven more alarming, the FDA Adverse Events Reporting System reports that approximately 70% of concerns stemming from lidocaine patches involve their poor adhesion." Compl. ¶ 18, n.5. However, this statistic relates to prescription-strength 5% lidocaine patches, not OTC 4% lidocaine patches.[11]

---

[9] Yellela S.R. Krishnaiah FDA Perspectives on Product Quality of Transdermal Drug Delivery Systems, PhD Division of Product Quality Research OTR/OPQ/CDER US Food and Drug Administration Silver Spring, MD, USA AAPS 2015_Sunrise Session (2015), https://healthdocbox.com/Deafness/74997073-Fda-perspectives-on-product-quality-of-transdermal-drug-delivery-systems.html (last accessed Aug. 23, 2022).
[10] *See, e.g., id.* at 6 (discussing quality defects of fentanyl patches); 7 (discussing adhesion failure of ADHD patches); 9 (discussing fentanyl patch recall); 10 (discussing product quality issues with patches used to discuss Parkinson's disease); 32 (discussing cold flow of hormone patches).
[11] *See* Gudin J, Nalamachu S. Utility of lidocaine as a topical analgesic and improvements in patch delivery systems. Postgrad Med. 2020;132(1):28–36, p. 33, doi:10.1080/00325481.2019.1702296 https://www.tandfonline.com/doi/full/10.1080/00325481.2019.1702296 (last accessed Aug. 23, 2022).

- Plaintiff cites studies of the adhesion rates of generic prescription lidocaine patches to support her allegations that Defendant's Product does not continuously adhere for 8 hours. Compl. ¶¶ 19-20, 22, nn. 6, 7, 11. The studies cited do not even discuss OTC lidocaine patches, let alone study/examine Defendant's Product, and the statistic Plaintiff cites concerns adhesion "*after 12 hours*," not eight. There is no factual basis to conclude the Product even uses the same patch technology as the prescription-strength lidocaine patches examined.

- Plaintiff cites a study regarding the adhesion of Scilex's prescription-strength lidocaine patches in support of her assertion "upon information and belief" that Defendant has not "innovated [its] technology based on clinical studies to ensure that [its] lidocaine patches reliably adhere to a consumer's body." Compl. ¶ 21, n.10.   A study allegedly "demonstrate[ing] that Scilex's lidocaine patches were able to reliably adhere when subjects engaged in moderate physical exercise" has no bearing on the adhesion of Defendant's Product. Compl., n. 10.

Individually and collectively, these citations do not relate to Plaintiff's claims against ***Defendant's*** Product and should be stricken as immaterial and impertinent.

Plaintiff's citations to Scilex Pharmaceuticals Inc.'s Citizen Petition to support her unfounded allegations that milligrams of lidocaine per patch should be used to measure "Maximum Strength" are also irrelevant and immaterial. *See* Compl. ¶¶ 26, 30, nn.13, 14, 17. The citizen petition addresses alleged safety concerns over high patch drug loads—not "maximum strength" labeling.  Moreover, the milligram measurement proposed by Plaintiff has not been adopted by the FDA and would be improper under FDA regulations.

Finally, Plaintiff's citation to the draft amendment to the 1983 TFM should be stricken.  *See* Compl. ¶¶ 27-28. As Plaintiff acknowledges, the FDA's discussion of terms such as "regular strength" and "maximum strength" pertain to labeling of OTC hydrocortisone products—not lidocaine patches. *Id.*; *see also* External Analgesic Drug Products for Over-the-Counter Human Use; Amendment of Tentative Final Monograph, 55 Fed. Reg. 6932 (Feb. 27, 1990). The Amendment does not mention OTC lidocaine patches at all.  Plaintiff fails to explain why the FDA's guidance on labeling for a

completely separate family of products is pertinent here. It is not.

The Court should strike the irrelevant, immaterial, and impertinent allegations in footnotes 3, 5, 6, 7, 10, 11, 13, 14, 15, 16, and 17 and paragraphs 27 and 28 on pages 9-13 of the Complaint.

## V.    CONCLUSION

Plaintiff fails to adequately plead her claims for violations of the FAL, CLRA, UCL, MMWA, and quasi-contract/unjust enrichment. Given that no further factual allegations can remedy the fatal defects in Plaintiff's Complaint, Defendant requests that the Court dismiss the Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"). Additionally, Defendant requests that the Court strike the allegations in footnotes 3, 5, 6, 7, 10, 11, 13, 14, 15, 16, and 17 and paragraphs 27 and 28 on pages 9-13 of the Complaint as irrelevant, immaterial, and impertinent under Fed. R. Civ. P. 12(f).

Dated:  August 24, 2022

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

Daniel J. Herling
Arameh Z. O'Boyle
Paige E. Adaskaveg

Attowrneys for Defendant
TARGET CORPORATION