UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEJUANA ARY,<br><br>   Plaintiff,<br><br>   v.<br><br>TARGET CORPORATION,<br><br>   Defendant. | Case No. 22-cv-02625-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE**<br><br>Re: Dkt. No. 21 |

Before the Court is Defendant Target Corporation's motion to dismiss and to strike. Dkt. No. 21 ("Mot."). The Court found this matter appropriate for disposition without oral argument and the matter was deemed submitted. *See* Dkt. No. 34; Civil L.R. 7-1(b). The Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.   BACKGROUND**

This is a proposed class action on behalf of purchasers of Target's over the counter "up & up lidocaine pain-relief patches." Dkt. No. 1 ("Compl.") ¶ 1. Plaintiff alleges that statements on the packaging that the patches provide "pain relief" using a "maximum strength" dose of lidocaine for "up to 8 hours" are misleading. *Id.* ¶ 3. According to Plaintiff, the patches "regularly peel off [users'] bodies within a few hours, and oftentimes minutes, after being properly applied." *Id.* Plaintiff further alleges that the patches do not contain or deliver the maximum amount of lidocaine available with or without a prescription.[1] *Id.*

---

[1] The Court **GRANTS** Defendant's request to take judicial notice of the complete lidocaine patch package, since the packaging is referenced in the complaint, is central to Plaintiff's claim, and its authenticity is not in question. *See* Dkt. No. 23; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court **DENIES** Defendant's other requests as moot because the Court did not consider the remaining documents.

Plaintiff brings causes of action for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and for unjust enrichment. Compl. ¶¶ 52–98.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

2

1  fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
2  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

3       Even if the court concludes that a 12(b)(6) motion should be granted, the "court should
4  grant leave to amend even if no request to amend the pleading was made, unless it determines that
5  the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203
6  F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

Defendant asserts myriad reasons why the complaint is deficient. *See generally* Mot. The Court finds that Plaintiff has adequately alleged that statements on the lidocaine patch packaging are misleading, and that Plaintiff has statutory standing and standing to pursue injunctive relief. However, the Court finds that some of Plaintiff's claims fail for lack of jurisdiction.

### A. Failure to State a Claim under the UCL, CLRA, and FAL

Defendant argues that Plaintiff fails to plausibly allege that the lidocaine patch labeling was deceptive, or that Defendant had a duty to disclose certain omitted facts about the patches. *See* Mot. at 8–16. The Court disagrees.

The UCL, CLRA, and FAL claims are all governed by the "reasonable consumer" test. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer test, [Plaintiff] must show that members of the public are likely to be deceived." *Id.* (quotations omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003). Rather, the test is whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact." *Williams*, 552 F.3d at 938. It is thus a "rare situation" when "granting a motion to dismiss [a UCL, CLRA, or FAL claim] is appropriate." *Id.* at 939.

Like other courts addressing motions to dismiss in similar lidocaine patch cases, the Court finds that Plaintiff has alleged enough to support an inference that a reasonable consumer

3

would be misled by the labels. *See, e.g.*, *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 922–23 (N.D. Cal. 2021) (finding sufficient allegations that "MAXIMUM STRENGTH," "use 1 patch for up to 12 hours," and "apply for 8 hours" could lead consumers to believe patches offered "the maximum amount of lidocaine available in patch form" and "adhere to the skin and provide pain relief for periods of 8 or 12 hours . . . .");[2] *Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *4–5 (N.D. Ill. Mar. 2, 2023) (addressing "maximum strength" label); *Stevens v. Walgreen Co.*, --- F. Supp. 3d ---, No. 21-CV-10603 (JPO), 2022 WL 3681279, at *3, *5 (S.D.N.Y. Aug. 24, 2022) (finding "Maximum Strength" and "Use One Patch for up to 12 Hours" statements plausibly misleading).

First, Plaintiff alleges that the "maximum strength" label leads consumers to believe that the patches "(1) contain and deliver the maximum amount of lidocaine available in the market; and (2) that they are superior, or at least equivalent, in efficacy and results to other over-the-counter and/or prescription-strength lidocaine patches." Compl. ¶ 13. According to Plaintiff, however, other lidocaine patches contain a greater amount of lidocaine. *Id.* ¶¶ 30–31. Second, Plaintiff alleges that the "pain relief" for "up to 8 hours" label leads consumers to believe the patches "would continuously adhere to their bodies for 8 hours and would provide pain relief throughout the specified amount of time." *Id.* ¶ 12. However, Plaintiff states the patches "systematically" fail to adhere for 8 hours "by large margins," sometimes within minutes, "given their poor adhesion technology." *See id.* ¶¶ 3, 14, 22.

Most of Defendant's arguments are factual disputes that have been rejected at the motion to dismiss stage by a number of courts, and any minor differences Defendant points to do not undermine the relevant reasoning. *See, e.g.*, *Acosta-Aguayo*, 2023 WL 2333300, at *4–5 (rejecting the argument that 4% is the maximum concentration permitted by the FDA and that a

---

[2] Judge Tigar has addressed nearly identical lidocaine patch allegations in *Hrapoff v. Hisamitsu Am., Inc.*, No. 21-CV-01943-JST, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022) ("Whether a reasonable consumer could imply from the language on the label that the patch is superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine products is a question of fact that cannot be resolved at this juncture."); *Ablaza v. Sanofi-Aventis U.S. LLC*, 4:21-cv-01942-JST, Dkt. No. 66 (N.D. Cal. July 12, 2022) (adopting the *Scilex* reasoning that whether "max strength" is misleading is a question of fact).

4

reasonable consumer would not understand the phrase "maximum strength" to include prescription products). Neither the inclusion of an over-the-counter comparator or the absence of a "stay-put flexible" statement changes the Court's conclusion. *See Scilex*, 552 F. Supp. 3d at 920–21 (finding "maximum strength" plausibly misleading even where qualifying language explained it only applied to over-the-counter products).

Because the Court finds that Plaintiff has plausibly alleged affirmative misrepresentations, Plaintiff's theory based on a duty to disclose material facts is viable too. *See Hrapoff*, 2022 WL 2168076, at *3. Defendant has a duty to disclose when "disclosure is necessary to counter an affirmative misrepresentation." *See McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 966 (N.D. Cal. 2016); *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997) (there is a duty to disclose "when the defendant makes partial representations but also suppresses some material facts"). Based on the "maximum strength" and "pain relief" for "up to 8 hours" representations, Plaintiff asserts that, among other things, Defendant was required to disclose that the patches fail to adhere well before 8 hours, cannot withstand regular activities (such as walking), and are not as strong as other available patches. *See, e.g.*, Compl. ¶¶ 14, 65. Given the Court's conclusion that the affirmative representations are plausibly misleading, the Court also finds that the complaint sufficiently alleges a duty to disclose based on these representations.

In sum, the Court finds that Plaintiffs have plausibly alleged that statements on the lidocaine patch packaging were deceptive, and that Defendant had a duty to disclose certain omitted facts about the patches.[3]

**B.   Standing**

Defendant also avers that Plaintiff lacks standing to pursue injunctive relief and statutory standing for her FAL and UCL claims, and that the Court does not have equitable jurisdiction over the claims for equitable relief. The Court finds that plaintiff has standing, but that except for

---

[3] Because Plaintiff has adequately alleged that reasonable consumers would be misled, the Court finds that Plaintiff has stated a claim under the unfair and unlawful prongs of the UCL. However, as explained below, the Court does not have equitable jurisdiction over the UCL claim.

Plaintiff's claim for injunctive relief, the Court does not have equitable jurisdiction over Plaintiff's equitable claims.

### i. Injunctive Relief

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). So once a plaintiff has been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quotation omitted). In the context of false advertising cases, the Ninth Circuit has confirmed "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A plaintiff may establish the risk of future harm in two ways: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Here, consistent with *Davidson*, Plaintiff alleges that she "continues to desire to purchase the Lidocaine Patches from Defendant." Compl. ¶ 6. She asserts that "as long as Defendant continues to represent that Lidocaine Patches afford 'pain-relief' using a 'maximum strength' dose of lidocaine for 'up to 8 hours' without disclosing their actual pharmalogical qualities, when presented with false or misleading information when shopping, she will be unable to make informed decisions about whether to purchase Defendant's Lidocaine Patches . . . ." *See id.* The Court finds that when these allegations are viewed in the light most favorable to Plaintiff—as they must be at this stage—they are sufficient to establish a risk of future harm. Plaintiff has alleged that she cannot rely on Defendant's labeling, and thus cannot purchase their products although she would like to do so in the future if properly labeled.

6

### ii. Statutory Standing

Under the FAL and UCL, standing is limited to a "person who has suffered injury in fact and has lost money or property" as a result. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320–21 (2011). As the Ninth Circuit has noted, "[u]nder California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *See Davidson*, 889 F.3d at 965. According to Defendant, Plaintiff's allegation that she "paid a substantial price premium" is insufficient because she failed to offer a price comparison to a non-maximum strength lidocaine product. *See* Mot. at 17. But "[t]o properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation." *Davidson*, 889 F.3d at 966 (quotation omitted). Plaintiff has done that here. *See* Compl. ¶ 31. Despite Defendant's urging, Plaintiff need not have requested a refund outside this litigation to have standing. *Accord Reeves v. Niantic, Inc.*, No. 21-CV-05883-VC, 2022 WL 1769119, at *1 (N.D. Cal. May 31, 2022) (citing *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1035–36 (N.D. Cal. 2020)). Thus, the Court finds that Plaintiff has adequately alleged an economic injury under the FAL and UCL.

### iii. Equitable Jurisdiction

Defendant argues that Plaintiff's FAL, UCL, CLRA,[4] and unjust enrichment claims should be dismissed because they are equitable claims and Plaintiff has not established that she lacks an adequate remedy at law. Defendant relies on *Sonner v. Premier Nutrition Corp.*, in which the Ninth Circuit upheld the dismissal of claims for restitution because the plaintiff also had asserted a claim for money damages under the CLRA. 971 F.3d 834, 843–44 (9th Cir. 2020).

"In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022). Although this Court has, in the past, noted *Sonner*'s odd procedural posture, the Ninth Circuit in *Guzman* recently

---

[4] Although the CLRA provides for money damages, Plaintiff only seeks injunctive relief under the CLRA in the current complaint. *See* Compl. ¶ 78.

7

indicated that *Sonner*'s holding was not limited to its posture. *See id.* And the Court disagrees with Plaintiff that she may plead equitable remedies in the alternative. *See Forrett v. Gourmet Nut, Inc.*, No. 22-CV-02045-BLF, 2022 WL 6768217, at *5 (N.D. Cal. Oct. 11, 2022) (rejecting argument that plaintiffs may plead equitable relief in the alternative and dismissing UCL, FAL, and unjust enrichment claims).

Courts applying *Sonner* have distinguished between equitable relief for past harm, including restitution and disgorgement, and injunctive relief for future harm. *See, e.g.*, *Price v. Wells Fargo & Co.*, No. 22-CV-03128-JSC, 2022 WL 17821590, at *1–2 (N.D. Cal. Dec. 6, 2022) (dismissing request for restitution for lack of equitable jurisdiction and maintaining injunctive relief claim); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *6–7 (N.D. Cal. Nov. 6, 2020) (dismissing requests for restitution and disgorgement but finding plaintiff lacked an adequate legal remedy for future harm); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 917–18 (E.D. Cal. 2020) (finding "plaintiff may pursue her equitable claims for injunctive relief to the extent they are premised on alleged future harm").

Here, Plaintiff has not alleged or established that she lacks an adequate remedy at law in the form of damages for past harm, so the Court finds that it lacks equitable jurisdiction over Plaintiff's requests for restitution and disgorgement. However, to the extent Plaintiff seeks injunctive relief, Plaintiff' allegations are sufficient to suggest she does not have an adequate remedy at law for future harm. Plaintiff alleges that she wants to purchase the Lidocaine Patches but cannot make informed decisions about whether to purchase them as long as Defendant continues its current labeling practices. *See* Compl. ¶ 6. Thus, the Court finds that "at this stage of the litigation there is an ongoing, prospective nature to plaintiff's allegations given her contention that she and other future purchasers will continue to be misled . . . . sufficient to suggest a likelihood of future harm amenable to injunctive relief." *Roper*, 510 F. Supp. 3d at 918 (quotations omitted).

Thus, Plaintiff's requests for restitution and disgorgement under the FAL and UCL, and unjust enrichment claim, are **DISMISSED** without leave to amend and without prejudice to refiling in state court, as *Guzman* instructs. *See* 49 F.4th at 1314–15. Plaintiff's claims for

1  injunctive relief under the FAL and CLRA may proceed, and the Court grants Plaintiff's request to
2  amend the complaint to seek damages under the CLRA.  *See* Dkt. No. 32 ("Opp") at 20.

### C. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act "provides a [federal] cause of action for express and implied warranty claims under state law." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1032 (9th Cir. 2020).  Where a case is brought as a class action, there must be at least one hundred named plaintiffs for a district court to exercise jurisdiction over an MMWA claim.  *Id.*  In *Floyd*, the Ninth Circuit held that the Class Action Fairness Act, which grants district courts original jurisdiction over certain class actions, "may not be used to evade or override the MMWA's specific numerosity requirement."  *Id.* at 1035; *see also Shoner v. Carrier Corp.*, 30 F.4th 1144, 1147 (9th Cir. 2022) ("[In *Floyd*], we clarified that a plaintiff asserting an MMWA class claim must name 100 class members in the complaint.").

There is only one named plaintiff in this case, so the Court finds that it does not have jurisdiction over Plaintiff's MMWA class claim.  And given Plaintiff's admission that she failed to assert an independent state law warranty claim, and her failure to address Defendant's argument that she has not met the jurisdictional requirement for an individual MMWA claim, the Court **DISMISSES** the MMWA claim in its entirety.  The Court grants leave to amend, but if Plaintiff cannot, consistent with counsel's Rule 11 obligations, meet the jurisdictional requirements of the MMWA, she may not renew this claim.

### D. Punitive Damages

Defendant argues that Plaintiff's request for punitive damages should be dismissed because (1) they are not recoverable under any of Plaintiff's claims as currently pled, and (2) Plaintiff has not pled "oppression, fraud, or malice" to support her punitive damages claim as required by California Civil Code Section 3294.  *See* Mot. at 21.  Plaintiff responds by requesting leave to amend to seek punitive damages under the CLRA and asserting that she need not meet the requirements of Section 3294.  *See* Opp. at 20.

The Court will grant leave to amend, so the only question is what Plaintiff must plead to support any request for punitive damages.  Section 3294(a) allows for punitive damages only

9

when "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" and "the wrongful act giving rise to the exemplary damages [were] committed by an 'officer, director, or managing agent.'" *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999). The statute provides clear definitions for each potential basis for punitive damages. *See* Cal. Civ. Code § 3294(c)(1)–(3). Plaintiff's only argument that Section 3294(a) doesn't apply is that it conflicts with federal pleading requirements. *See* Opp. at 20. But the Court "will apply the substantive law embodied in section 3294" even if "determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure." *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1353 (N.D. Cal. 1997).

Thus, Plaintiffs must include allegations that raise a plausible inference of oppression, fraud, or malice committed by an officer, director, or managing agent as defined in Cal. Civ. Code § 3294(a) in any amended complaint that seeks punitive damages. The Court **DISMISSES** Plaintiff's request for punitive damages with leave to amend.

### E. Motion to Strike

Defendant also moves to strike allegations in the complaint that refer to certain publications and a citizen petition, arguing that they are immaterial and irrelevant because they are not about Defendant's product. Mot. at 22–24.

Federal Rule of Civil Procedure 12(f) provides that a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. C 09-03557 JSW, 2010 WL 370333, at *2 (N.D. Cal. Jan. 25, 2010). "Where there is any doubt as to the relevance of the challenged allegations, courts generally err on the side permitting the allegations to stand . . . ." *See id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 534 (1994)). This is particularly true when the moving party shows no prejudice and when striking the allegations will not streamline the ultimate resolution of the action. *Id.*

10

1    Plaintiff asserts that the studies and reports cited in the complaint provide background and
2 context for her allegations. *See* Opp. at 22. At minimum, the relevance of the material is in
3 dispute, and the Court cannot find at this stage that it would have "no possible bearing" on the
4 case. *See Scilex*, 552 F. Supp. 3d at 923 (denying a motion to strike references to one of the same
5 documents at issue here). Also, Defendant has not identified prejudice it would suffer if the
6 allegations remain or explained how striking them would streamline the case. The Court thus
7 **DENIES** Defendant's motion to strike.

### IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. Dkt. No. 21. Plaintiff's restitution and disgorgement claims under the UCL and FAL, as well as her unjust enrichment claim, are dismissed without leave to amend and without prejudice to refiling in state court. Plaintiff's claim for injunctive relief under the FAL and CLRA may proceed. The Court grants leave to amend to seek damages under the CLRA. Plaintiff's MMWA claim and request for punitive damages are dismissed with leave to amend. The Court **DENIES** Defendant's motion to strike. Plaintiff may file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a telephonic case management conference on May 2, 2023, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD.

//
//
//
//
//

The Court **DIRECTS** the parties to meet and confer and submit a joint case management statement by April 25, 2023. The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated: 3/23/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge